UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

JILL MARIE ROBERTS,

                              Plaintiff,                      DECISION AND ORDER

-vs-

                                                                  1:19-CV-0651 (CJS)

COMMISSIONER OF SOCIAL SECURITY,

                              Defendant.

_____

INTRODUCTION

Plaintiff Jill Marie Roberts ("Plaintiff") brings this action pursuant to 42 U.S.C. § 405(g) to review the final determination of the Commissioner of Social Security ("Commissioner") denying Plaintiff's applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"). Both parties have moved for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c). Pl.'s Mot., Nov. 12, 2019, ECF No. 8; Def.'s Mot., Jan. 10, 2020, ECF No. 11. For the reasons set forth below, Plaintiff's motion for judgment on the pleadings (ECF No. 8) is granted, the Commissioner's motion (ECF No. 11) is denied, and the matter is remanded to the Commissioner pursuant to sentence four of 42 U.S.C. § 405(g) for further administrative proceedings consistent with this decision.

PROCEDURAL HISTORY

The Court assumes the reader's familiarity with the facts and procedural history in this case, and therefore addresses only those facts and issues which bear directly on the resolution of the motions presently before the Court. Plaintiff filed her DIB

application on January 27, 2016, alleging an onset date of February 1, 2014. Transcript ("Tr."), Aug. 9, 2019, ECF No. 181. On April 6, 2016, Plaintiff also filed an application for SSI benefits. Tr. 187. In her "Disability Report," dated April 6, 2016, Plaintiff reported several conditions as limiting her ability to work: depression, pseudobulbar affect (PBA), herniated disc in her lower back, migraines, arthritis in her right knee, neck disc degeneration, Type 2 diabetes, and gastroparesis. Tr. 229. On June 22, 2016, the Commissioner determined that Plaintiff was not disabled, and that she did not qualify for either DIB or SSI benefits. Tr. 95, 108. Thereafter, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). Tr. 128.

Plaintiff's request was approved and the hearing was held on May 31, 2018 in Buffalo, New York. Tr. 37. Plaintiff appeared with her attorney, Nicholas DiVirgilio. Tr. 37. Vocational expert Rachel Duchon testified by telephone. Tr. 72–81. Attorney DiVirgilio argued that Plaintiff was unable to work due to limitations "caused by [severe] impairments that include chronic migraines, neuralgia, gastroparesis, lumbar back pain, depressive disorder, anxiety disorder, pseudobulbar affect, chronic pain syndrome, bilateral sciatica, cervical spine pain, as well as degenerative changes in the bilateral ankles." Tr. 41.

In his decision on July 5, 2018, the ALJ found that Plaintiff was not disabled, and denied both DIB and SSI benefits. Tr. 23. On March 22, 2019, the Social Security Administration's Appeals Council denied Plaintiff's request for further review of the ALJ's decision. Tr. 1. The ALJ's decision thus became the "final decision" of the Commissioner subject to judicial review under 42 U.S.C. § 405(g).

## LEGAL STANDARDS

The law defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). In order to qualify for DIB benefits, the DIB claimant must satisfy the requirements for a special insured status. 42 U.S.C. § 423(c)(1). In addition, the Social Security Administration has outlined a "five-step, sequential evaluation process" to determine whether a DIB or SSI claimant is disabled:

> (1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe impairment or combination of impairments; (3) whether the impairment meets or equals the severity of the specified impairments in the Listing of Impairments; (4) based on a "residual functional capacity" assessment, whether the claimant can perform any of his or her past relevant work despite the impairment; and (5) whether there are significant numbers of jobs in the national economy that the claimant can perform given the claimant's residual functional capacity, age, education, and work experience.

*McIntyre v. Colvin*, 758 F.3d 146, 150 (2d Cir. 2014) (citing *Burgess v. Astrue*, 537 F.3d 117, 120 (2d Cir. 2008); 20 C.F.R. § 404.1520(a)(4)(i)–(v), § 416.920(a)(4)(i)–(v)).

The claimant bears the burden of proof for the first four steps of the sequential evaluation. 42 U.S.C. § 423(d)(5)(A); *Melville v. Apfel*, 198 F.3d 45, 51 (2d Cir. 1999). At step five, the burden shifts to the Commissioner only to demonstrate that there is other work in the national economy that the claimant can perform. *Poupore v. Asture*, 566 F.3d 303, 306 (2d Cir. 2009).

42 U.S.C. § 405(g) defines the process and scope of judicial review of the final

decision of the Commissioner on whether a claimant has a "disability" that would entitle him or her to DIB and SSI benefits. *See also* 42 U.S.C. § 1383(c)(3). It is not the reviewing court's function to "determine de novo whether [the claimant] is disabled." *Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998). Rather, the reviewing court must first determine "whether the Commissioner applied the correct legal standard." *Jackson v. Barnhart*, No. 06-CV-0213, 2008 WL 1848624, at *6 (W.D.N.Y. Apr. 23, 2008) (quoting *Tejada v. Apfel*, 167 F.3d 770, 773 (2d Cir. 1999)). Provided the correct legal standards are applied, a finding by the Commissioner is "conclusive" if it is supported by "substantial evidence." 42 U.S.C. § 405(g). In other words, "[w]here the Commissioner's decision rests on adequate findings supported by evidence having rational probative force, [the Court] will not substitute our judgment for that of the Commissioner." *Veino v. Barnhart*, 312 F.3d 578, 586 (2d Cir. 2002).

## DISCUSSION

In this case, the ALJ found that the Claimant met the special insured status requirements of the Social Security Act through September 30, 2020. Tr. 12. At step one of the five-step evaluation process, the ALJ found that Plaintiff had not engaged in substantial gainful activity since February 1, 2014, the alleged disability onset date. Tr. 12. At step two, the ALJ determined that Plaintiff has severe mental and physical impairments: obesity, migraines, degenerative joint disease of the right knee, degenerative disc disease of the back and neck, disorder of the right and left ankles, pseudobulbar affect disorder, and depression. Tr. 12. The ALJ also noted that although the record documents Plaintiff's GERD, gastroparesis, hernia, sleep apnea, asthma, and

diabetes, there is no evidence that those conditions cause more than minimal work-related limitations. Tr. 13. The ALJ stated there was no evidence of a medically determinable impairment related to Plaintiff's left knee pain. Tr. 13.

At step three of the process, the ALJ determined that none of Plaintiff's impairments, mental or physical, considered either individually or in combination, meet or medically equal the severity of the listed impairments in 20 C.F.R. Part 404, Subpart P, App'x 1. Tr. 13. In assessing the severity of Plaintiff's mental impairments, the ALJ found Plaintiff has a moderate limitation in understanding, remembering, or applying information; a moderate limitation in interacting with others; a moderate limitation with regard to concentrating, persisting, or maintaining pace; and a mild limitation for adapting or managing oneself. Tr. 14–15. The ALJ noted that these findings satisfied neither the "Paragraph B" or "Paragraph C" criteria for Mental Disorders. Tr. 14.

Then, before proceeding to step four, the ALJ made a determination of Plaintiff's residual functional capacity. "Residual functional capacity" ("RFC") means the most that the claimant can still do in a work setting despite the limitations caused by the claimant's impairments. 20 C.F.R. § 404.1545, § 416.945. After careful consideration of the entire record, the ALJ determined that Plaintiff had the RFC to perform sedentary work as defined in 20 C.F.R. § 404.1567(a) and § 416.967(a), except that Plaintiff:

> [C]an occasionally climb ramps and stairs; can occasionally kneel, crouch, and crawl; can never climb ladders, ropes, or scaffolds; can perform no work at unprotected heights or around dangerous moving mechanical parts; can have no exposure to loud noise; can perform no work on uneven ground; can make no use of foot controls; can understand, remember and carry out simple instructions and tasks; can have no supervisory duties, no independent decision-making, and no strict production quotas; is limited to minimal changes in work routine and processes; and can have frequent

5

interaction with supervisors, co-workers, and the general public.

Tr. 15.

Based on this RFC, and on the testimony of the vocational expert, at step four the ALJ found that Plaintiff was unable to perform her past relevant work as, among other things, a receptionist. Tr. 21. Nevertheless, the ALJ determined at step five that, considering Plaintiff's age, education, work experience, and RFC, jobs exist in significant numbers in the national economy that she can perform. *See* 20 C.F.R. § 404.1569, § 416.969. Relying on the vocational expert's testimony, the ALJ found that a person of Plaintiff's age, education, work experience and RFC could perform such jobs in the national economy as a food and beverage order clerk, and a charge account clerk. Tr. 22. Hence, the ALJ found Plaintiff *was not* disabled for the purposes of DIB or SSI. Tr. 23.

In seeking reversal of the Commissioner's decision, Plaintiff makes two arguments. First, Plaintiff argues that the ALJ's RFC determination with respect to Plaintiff's mental limitations is not supported by substantial evidence. Pl. Mem. of Law, 15–19, Nov. 12, 2019, ECF No. 8-1. Second, Plaintiff argues that the ALJ's findings with respect to Plaintiff's migraines also are not supported by substantial evidence. Pl. Mem. of Law, 19–25. The Commissioner disputes Plaintiff's contentions and maintains that the ALJ's decision is free of legal error and supported by substantial evidence. For ease of discussion, the Court addresses Plaintiff's arguments in reverse order.

<u>Plaintiff's Migraine Headaches</u>

Plaintiff argues that the ALJ's RFC finding with respect to Plaintiff's migraine headaches was not supported by substantial evidence. Pl. Mem. of Law at 19. Specifically,

Plaintiff argues that the ALJ did not set forth his credibility findings regarding Plaintiff's migraines with sufficient specificity to permit intelligible plenary review of the record. Pl. Mem. of Law at 20. The Court disagrees.

As indicated above, provided the correct legal standards are applied, a finding by the Commissioner is "conclusive" if it is supported by "substantial evidence." 42 U.S.C. § 405(g). "[W]hatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019). Substantial evidence is defined as "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consolidated Edison Co. v. N.L.R.B.*, 305 U.S. 197, 229 (1938)).

To determine whether a finding, inference or conclusion is supported by substantial evidence, "[t]he Court carefully considers the whole record, examining evidence from both sides 'because an analysis of the substantiality of the evidence must also include that which detracts from its weight.'" *Tejada*, 167 F.3d at 774 (quoting *Quinones v. Chater*, 117 F.3d 29, 33 (2d Cir. 1997)). The reviewing court will defer to the Commissioner where his finding is supported by substantial evidence, as it is not the reviewing court's function to determine *de novo* whether a plaintiff is disabled. *Brault v. Soc. Sec. Admin., Comm'r*, 683 F.3d 443, 447 (2d Cir. 2012).

In the present case, the ALJ noted that in her "Function Report," Plaintiff stated "that [s]he has trouble with personal care and performing household chores due to migraines and pain." Tr. 16. The ALJ also noted Plaintiff's testimony at the hearing "that

she gets migraines up to four times per week, which can last at least two hours, and during which [Plaintiff] lays in bed." Tr. 16. Nevertheless, in his discussion of the medical record, the ALJ provided a thorough explanation of the evidence supporting his finding that Plaintiff's migraines did not result in significant limitations in her functional capacity. The ALJ stated,

> [Plaintiff] has also sought treatment for migraine headaches, where [Plaintiff] initially reported having up to five headaches per week. For her headaches, [Plaintiff] has been prescribed medication, and she has also undergone Botox and trigger point injections. However, the claimant has regularly reported a decrease in migraine activity with treatment . . . . By October 2017, the claimant reported having one headache every two to three weeks . . . . As such, the record reveals that the claimant's treatment has been relatively effective in relatively stabilizing [Plaintiff] to where [Plaintiff]'s headaches are generally episodic and intermittent with only infrequent exacerbations that would not interfere with appropriate work activities on a sustained, ongoing basis.

Tr. 17 (internal citations to the record omitted). Further, the ALJ noted that Plaintiff testified she has had migraines since she was 19 years old, with similar frequency and intensity, and points out that she was nevertheless able to perform full-time work at substantial gainful activity levels until February 1, 2014. Tr. 19.

Because the ALJ made his finding based on a comprehensive review of both sides of the evidence in the record, which was adequately explained in his decision, the Court finds that the ALJ's RFC determination with respect to Plaintiff's migraine headaches was supported by substantial evidence.

Plaintiff's Mental Impairments

Plaintiff also argues that the ALJ's RFC finding with regards to Plaintiff's mental impairments is error because, although an ALJ may make common sense judgments

8

where the medical evidence shows minor impairments, the ALJ may not substitute his or her own lay opinion for that of a medical professional when the record contains complex findings or indicates severe impairments. Pl. Mem. of Law at 16 (citing, *inter alia*, *Urban v. Berryhill*, No. 16-CV-76-FPG, 2017 WL 1289587 (W.D.N.Y. Apr. 7, 2017)). Plaintiff argues that the lack of a medical opinion from a treating source with respect to her medical impairments created an evidentiary gap that the ALJ was required to remedy by obtaining a consultative examination or requesting opinion evidence from Plaintiff's treating source. *Id.* at 17. The Court agrees.

"Because a hearing on disability benefits is a non-adversarial proceeding, the ALJ generally has an affirmative obligation to develop the administrative record. This duty exists even when the claimant is represented by counsel." *Perez v. Chater*, 77 F.3d 41, 47 (2d Cir. 1996). It is not *per se* error for an ALJ to make an RFC determination without relying on a medical opinion when "the record contains sufficient evidence from which an ALJ can assess the [claimant's] residual functional capacity." *Tankisi v. Comm'r of Soc. Sec.*, 521 F. App'x 29, 34 (2d Cir. 2013); *see also Cichocki v. Astrue*, 729 F.3d 172, 177 (2d Cir. 2013) ("We decline to adopt a *per se* rule. The relevant inquiry is whether the ALJ applied the correct legal standards and whether the ALJ's determination is supported by substantial evidence."). Consequently, when the medical evidence shows only minor physical impairments, it may be permissible for an ALJ to render a common-sense determination about a claimant's RFC. *Dale v. Colvin*, No. 15-CV-496-FPG, 2016 WL 4098431, at *3 (W.D.N.Y. Aug. 2, 2016).

However, the general rule is that where the medical findings in the record merely

diagnose the claimant's impairments and do not relate those diagnoses to specific residual functional capabilities, the Commissioner "may not make the connection himself." *Id*. (citing *Wilson v. Colvin*, No. 13-CV-6286P, 2015 WL 1003933, at *21 (W.D.N.Y. Mar. 6, 2015); *Jermyn v. Colvin*, No. 13-CV-5093 (MKB), 2015 WL 1298997, at *19 (E.D.N.Y. Mar. 23, 2015)). Indeed, "where the record is not otherwise complete and fails to meaningfully address a claimant's functional physical and/or mental limitations, the ALJ's duty to further develop the record is triggered, and the ALJ's failure to satisfy that duty is reversible error." *Deshotel v. Berryhill*, 313 F. Supp. 3d 432, 434 (W.D.N.Y. 2018) (citation omitted). "[T]he leeway given to ALJs to make 'common sense judgments' does not necessarily extend to the assessment of mental limitations, which are by their very nature 'highly complex and individualized.'" *Id.* at 434–435.

Here, the Court notes that although the ALJ's decision contains a thorough discussion of Plaintiff's testimony and the medical evidence, the record is devoid of a medical opinion from a treating or examining source. Rather, the ALJ considered only the opinion of state disability examiner, J. Ochoa, M.D, who concluded that Plaintiff did not have a severe mental impairment. Based on a review of Plaintiff's records in June of 2016, Dr. Ochoa evaluated Plaintiff as having only mild limitations with respect to restrictions for daily living, difficulties in maintaining social functioning, and difficulties in maintaining concentration, persistence or pace, and had no episodes of decompensation.[1] Yet, Dr. Ochoa did not examine Plaintiff, and he did not have access

---

[1] From June 13, 2011 to January 16, 2017, the "four broad areas" of mental functioning to be evaluated in determining the severity of a claimant's mental impairments were: "Activities of daily living; social functioning; concentration, persistence, or pace; and episodes of decompensation." 20 C.F.R. § 404.1520a(c)(3) (2011). As amended in 2017, the four broad areas of § 404.1520a(c)(3) (2017) include

10

to over 150 pages of treatment notes taken by licensed mental health counselor Chianti Mingo during multiple counseling sessions in 2017 and 2018. Tr. 753–916.

With access to those records from Ms. Mingo, and having taken Plaintiff's testimony, the ALJ concluded that Plaintiff did, in fact, have two severe mental impairments: pseudobulbar affect disorder and depression. Tr. 12. Accordingly, the ALJ assigned Dr. Ochoa's opinion "little weight" and stated that Plaintiff's "longitudinal treatment record, including the need for medication management and counseling, supports finding that the claimant should be limited to the range of simple work described" in the ALJ's RFC. Tr. 21. Even so, despite Plaintiff's severe mental impairments, the ALJ found that her RFC was not so limited as to render Plaintiff disabled.

However, the ALJ was not permitted to make such "common sense judgments" about Plaintiff's functional capacity because there was no medical opinion on the record from a treating or examining source with respect to the effect of Plaintiff's mental impairments on her functional capacity. *See, e.g., Jones v. Colvin*, 2015 WL 5126151 at \*4–5 (W.D.N.Y. 2015) (citing *Ramos v. Colvin*, No. 13–CP–6503P, 2015 WL 925965, \*9 (W.D.N.Y. Mar.4, 2015) for the proposition that "because the ALJ concluded that [p]laintiff's depression was significant enough to constitute a severe impairment, his subsequent failure to obtain a medical assessment of the extent of that impairment from either a treating or consultative examiner quantifying [p]laintiff's mental limitations

---

"Understand, remember, or apply information; interact with others; concentrate, persist, or maintain pace; and adapt or manage oneself."

11

rendered the record incomplete"). While an ALJ may, in some circumstances, proceed without a medical source opinion as to the claimant's functional limitations, there must still be "sufficient evidence" for the ALJ to properly make the RFC determination. Here, the ALJ's failure to obtain a medical opinion from a treating or examining source left him with insufficient evidence for his RFC determination with respect to Plaintiff's mental impairments. The Court therefore finds remand to be appropriate.

## CONCLUSION

For the foregoing reasons, it is hereby ORDERED that Plaintiff's motion for judgment on the pleadings (ECF No. 8) is granted, the Commissioner's motion (ECF No. 11) is denied, and the matter is remanded to the Commissioner pursuant to 42 U.S.C. § 405(g), sentence four, for further administrative proceedings consistent with this decision.

DATED:   September 17, 2020
         Rochester, New York

                                        /s/ Charles J. Siragusa
                                        CHARLES J. SIRAGUSA
                                        United States District Judge